[No. E009536. Fourth Dist., Div. Two. Apr. 16, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
TIMOTHY ARNOLD ELLIOTT, Defendant and Appellant.

## COUNSEL

David J. Macher, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James E. Atkins, Carl H. Horst and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TIMLIN, J.—Defendant appeals from his conviction by jury of one count of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (b))—attended by a true finding (the truth of which had been admitted by defendant) that he had suffered a prior conviction of a serious felony within the meaning of section 667, subdivision (a).[1]

On appeal, defendant raises only one contention: The trial court erred prejudicially by refusing to instruct the jury, at defendant's request, as to the asserted lesser related offense of being an accessory (either to a robbery or to a "lesser included" grand theft). We shall conclude that the trial court did not err in refusing to give the instruction in question and, consequently, we shall affirm in full the judgment entered below.

---

[1]Unless otherwise indicated, all statutory citations refer to the Penal Code.

FACTS

At approximately 8 p.m. in the evening of January 30, 1991, Lucy Villapondo (Villapondo) had completed her shopping at the Redlands K-Mart and was returning to her car in the K-Mart parking lot. As she returned to her car, she noticed defendant and a woman (later identified as, and hereinafter referred to as, Powels) sitting on a parking lot "island" curb next to her car.

Villapondo unloaded her shopping cart and placed her packages in the trunk of her car. She then pushed her shopping cart over to the island on which defendant and Powels were sitting. Powels approached Villapondo and asked her for the time—immediately followed by defendant who also approached Villapondo and asked her for the time. Villapondo told Powels and defendant what the time was, and the two of them started to walk away. Powels then bent over and cried out as though she was in pain. Villapondo glanced over at the couple, and then turned back to unlock her car door. At this moment, Powels and defendant rushed toward Villapondo.

Upon reaching Villapondo's right side, defendant reached across her body and grabbed her purse. Defendant then demanded that Villapondo give up her car keys. Villapondo refused to give up her car keys and started to scream. Defendant reached out and took a key ring with one key on it out of Villapondo's left hand.[2]

As defendant's struggle with Villapondo was unfolding, Villapondo felt Powels (who was standing next to Villapondo's left side) push something against Villapondo's left side and then heard Powels order Villapondo into the car. Villapondo broke away from the couple and quickly walked away, back across the parking lot to the K-Mart store—screaming all the while.

Powels and defendant entered Villapondo's car—defendant through the driver-side door and Powels through the passenger-side door. However, upon discovering that the key they had taken was not the car key, Powels and defendant left the car and fled into a nearby orange grove.

In the meanwhile, the Redlands Police Department had received a report of the incident in the parking lot. Redlands police immediately responded to the report and arrived at the K-Mart within a few moments. Very shortly thereafter, the police officers found defendant and Powels crouching down together under a tree in the orange grove, trying to hide. When found, Powels was in possession of her own purse—within which was a black plastic sheath for a long, thin-bladed knife and an open pack of "generic"

---

[2]Villapondo was holding several key rings in her left hand at this moment.

cigarettes. When found, Powels had $31.82 on her person and defendant had $20.05 on his person. Somewhat later, the police found Villapondo's purse in the same orange grove, located approximately 50 to 75 yards away from where Powels and defendant had been hiding.

A search of Villapondo's car by the Redlands police revealed a knife on the dashboard of the car and a "generic" cigarette on the floorboard of the car. Once Villapondo had had a chance to "inventory" her purse after getting it back from the police, she was able to determine that approximately $27 was missing from it.

Defendant was thereafter charged by information with one count of second degree robbery, which charge was attended by the allegation that he had suffered a prior conviction of a serious felony within the meaning of section 667, subdivision (a). Before the jury trial was commenced, defendant waived a jury trial on the issue of his "prior" and admitted the truth thereof.[3]

A jury trial was then commenced as to the robbery charge brought against defendant. The evidence adduced by the People during the prosecution's case-in-chief comports with the above description of events. In his defense, defendant called Powels as a witness. Powels testified to the following effect:

(1) She had pled guilty to a robbery of Villapondo and had admitted to personally using a deadly or dangerous weapon in the commission of that robbery.

(2) Villapondo approached Powels and defendant as they were sitting in the K-mart parking lot. Powels asked Villapondo for the time—to which Villapondo responded that it was 8 o'clock. Defendant asked Powels what Villapondo had said, but did not ask Villapondo directly for the time.

(3) Powels bent over as if she were in great pain so as to mask her movement in bringing out a knife from her pants.

(4) Having secured the knife, she accosted Villapondo and held the end of the knife handle against Villapondo's side while she demanded the keys to Villapondo's car. Powels had discussed none of this with defendant.

(5) Powels grabbed a key from Villapondo's hand and took Villapondo's purse from her other hand. While this was happening, defendant was looking

---

[3]Powels was charged by the same information with one count of second degree robbery, which charge was attended by the allegation that she had personally used a deadly or dangerous weapon (a knife) in the commission of the robbery, within the meaning of section 12022, subdivision (b). Before the matter came to trial, Powels pled guilty to the robbery and admitted the "personal use enhancement."

bewildered by Powels's behavior but he remained standing by the "island" curb where he had been sitting with Powels originally.

(6) Powels got into the driver's side of Villapondo's car and placed both her purse and Villapondo's purse on the floorboard of the car. Defendant came running up to the car, yelling at Powels to get out of the car and trying to reach her to pull her out of the car. When defendant reached the car, Powels moved over to the car's passenger side and urged defendant to get into the car so that they could leave.

(7) Defendant put one knee in on the driver's side of Villapondo's car in an attempt to reach Powels to pull her from the car, but he never completely entered the car.

(8) Powels discovered that the key she had taken would not operate the car and turned to flee from the car. As she turned to leave the car, she grabbed one purse (her own) and defendant grabbed the other purse (Villapondo's). Powels thought that defendant thought that the purse he grabbed was hers (Powels's).

(9) Defendant and Powels fled from the parking lot—with defendant running "about three car lengths" ahead of Powels. Powels caught up with defendant and grabbed Villapondo's purse from him. When they reached the orange grove across a street from the parking lot, Powels "rifled" Villapondo's purse—taking a $20 bill for herself and giving defendant the "loose stuff [change] that was in my hand." Defendant had some money of his own with him at the time.

(10) Defendant and Powels then tried to leave the orange grove, only to discover that the police had mounted a search for them in the area. The couple returned to the orange grove, where they tried to hide. This is where they were when they were found by the police.

(11) Powels, on cross-examination, identified the $20.00 bill found on defendant's person at the time of his arrest as the bill she had taken from Villapondo's purse.

Following the close of evidence, the jury was instructed by the trial court. Included among the instructions was the instruction that grand theft was a lesser included felony of the charged robbery. The trial court refused the defense request that the jury be instructed that defendant could be found guilty of the lesser related crime of being an accessory to Powels's crime(s). After deliberations, the jury returned a guilty verdict against defendant,

finding him guilty of second degree robbery. Thereafter, at the sentencing hearing, defendant was sentenced to a midterm of three years of imprisonment in state prison, enhanced by a five-year enhancement in accord with defendant's previously admitted section 667, subdivision (a) "prior," for a total sentence of eight years of imprisonment in state prison.

Additional facts will be referred to, as needed, in the discussion which follows.

## DISCUSSION

As noted previously, defendant's sole contention on appeal is that the trial court prejudicially erred by refusing to instruct the jury, at defendant's request, as to the asserted lesser related offense of being an accessory to the Villapondo robbery (or, should the jury so find, to the Villapondo grand theft). To determine the merits of this contention, it is necessary to understand and apply the legal requirements surrounding the giving of "lesser related instructions" as they were declared and articulated by our Supreme Court in *People v. Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 647 P.2d 1303] (hereinafter cited simply as *Geiger*).

In *People v. Farrow* (1993) 13 Cal.App.4th 1606 [16 Cal.Rptr.2d 844], this court had recent occasion to examine *Geiger*:

"*Geiger*, in general terms, described 'the circumstances in which a defendant is entitled to instructions on related, but not necessarily included, offenses' in the following manner: (1) '. . . the first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged'; (2) 'Second, the offense must be one closely related to that charged and shown by the evidence. . . . Although some evidence offered by the People or the defendant may indicate that the defendant has committed a crime other than that charged, instructions regarding that crime need not be given unless the evidence is also relevant to and admitted for the purpose of establishing whether the defendant is guilty of the charged offense'; and (3) 'Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most

shows guilt only of the related offense.' (35 Cal.3d at pp. 531-532.)" (*Farrow, supra,* 13 Cal.App.4th at p. 1619.)[4]

As we discuss below, a review of the record on appeal reveals that the "first *Geiger* prong" is not met in this case. That is, there is no evidentiary basis in this case upon which a rational juror could have reasonably concluded that defendant was guilty only of being an accessory to the crime(s) committed by Powels.[5]

The only possible evidence from which a juror could even conceivably draw the conclusion that defendant was only an accessory to Powels's crime(s) is that of Powels's testimony itself—Villapondo's testimony was such that defendant was either (if Villapondo was believed) guilty of the charged robbery or (if Villapondo was not believed) guilty of nothing at all. Thus, the evidentiary focus during the remainder of our discussion is on Powels's testimony. Further, our focus on Powels's testimony must be undertaken in light of the statutory definition of "accessory."

The crime of being an accessory is defined in section 32 as follows:

"Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony."

Powels's testimony, when analyzed with an eye to section 32, reveals the following:

(1) There simply is no evidence that defendant ever "harbored" Powels within the meaning of section 32.

---

[4]*Geiger* also established the rule of law that "there is no obligation to instruct on related offenses in the absence of a request by the defendant for such instructions." (35 Cal.3d at p. 530.) In this case, there is no question but that defendant did request that the jury be instructed as to defendant's guilt as an accessory to Powels's crime(s) as a lesser related offense.

[5]In assessing the sufficiency of the evidence to warrant the giving of an instruction on a "lesser," we are guided by the general principles set forth in *People* v. *Glenn* (1991) 229 Cal.App.3d 1461, 1465 [280 Cal.Rptr. 609]: "The trial court should not measure the substantiality of the evidence by undertaking to weigh the credibility of witnesses, a task exclusively relegated to the jury. The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. As an obvious collorary, if the evidence is minimal and insubstantial the court need not instruct on its effect. Any doubts about the sufficiency of the evidence to warrant a requested instruction should be resolved in favor of the defendant." (Internal quotation marks, elipses and citations omitted.)

(2) Similarly, there simply is no evidence that defendant ever "concealed" Powels within the meaning of section 32. According to Powels, the couple "Crawled in the dirt. Tried to hide. . . . I was—I believe I was trying to hide under a tree." The most that can be gleaned from this evidence is that defendant was trying to *hide with* Powels—there is no evidence that he tried to "conceal" her.[6]

(3) Finally, there is no evidence that defendant tried to "aid" Powels within the meaning of section 32. Our conclusion in this regard derives from our understanding of the meaning of the word "aids" as it is used in section 32. ■■■ The word "aids" has not been specifically defined by either statute or case authority in the context of section 32; however, that word *has* been defined by case authority in the context of section 31 (in the context of defining the meaning of the phrase "aiding and abetting") and we take that same meaning to apply in the context of section 32.[7]

■ The word "aids" means "to *assist*; to *supplement* the efforts of another," while the word "abet" means merely to incite or encourage. (*People* v. *Bond* (1910) 13 Cal.App. 175, 185 [109 P. 150], italics added.)[8] This understanding that being an accessory ("one who aids") requires something more than mere encouragement or incitement is reflected in the analysis in *People* v. *Duty* (1969) 269 Cal.App.2d 97, at page 104 [74 Cal.Rptr. 606]: "The gist of the offense described by section 32 of the California Penal Code is that the accused [render] *[a]ny kind of overt or affirmative assistance to a known felon . . . .* The test of an accessory after the fact is that, he renders his principal *some personal help* to elude punishment,

---

[6]The testimony of the police officer who found the couple in the orange grove is not to the contrary: "The defendant was crouched underneath a tree with [a] female trying to hide."

[7]Section 31 and section 32 are interrelated in that they are both constituent elements of a single legislative scheme—that portion of the Penal Code which defines the status of various parties to crime (tit. 2, pt. 1, of the Pen. Code, "Parties to Crime"). One of the fundamental rules of statutory construction is that interrelated stautory provisions should be harmonized and that, to that end, the same word or phrase should be given the same meaning within the interrelated provisions of the law. (See, e.g., *Gruschka* v. *Unemployment Ins. Appeals Bd.* (1985) 169 Cal.App.3d 789, 792 [215 Cal.Rptr. 484]; and *In re Mark K.* (1984) 159 Cal.App.3d 94, 106 [205 Cal.Rptr. 393].)

[8]Accord: *People* v. *Carlson* (1960) 177 Cal.App.2d 201, at page 205 [2 Cal.Rptr. 117]; *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, at page 781 [18 Cal.Rptr. 905], disapproved by *People* v. *Beeman* (1984) 35 Cal.3d 547, at page 557 [199 Cal.Rptr. 60], on another ground; *In re Elisabeth H.* (1971) 20 Cal.App.3d 323, at page 331 [97 Cal.Rptr. 565]. See also, *People* v. *Beeman*, *supra*, 35 Cal.3d at page 556, stating that "aider and abettor" liability requires that one aid *and* (not "or") abet—thus highlighting the fact that the two words have a distinct and separate meaning.

—the kind of help being unimportant. [Citation.]" (Italics added; internal quotation marks omitted.)[9]

(1d) The record in this case is bereft of any evidence that defendant actually "aided" (as we have herein defined and discussed the word) Powels within the meaning of section 32. The most that can be said of defendant is that he *encouraged* Powels to run away and that he, thereafter, hid with her. This does not render him an accessory to Powels's crime(s) within the meaning of section 32.

In summary: (1) There was no evidentiary basis in this case upon which a rational juror could have reasonably concluded that defendant was guilty, at most, of being an accessory to the crime(s) committed by Powels against Villapondo; (2) consequently, the "first *Geiger* prong" was not met in this case with respect to the trial court's obligation to give a "lesser related instruction" on guilt as an accessory; and (3) thus, the trial court did not err in refusing to instruct the jury as to the crime of being an accessory.

DISPOSITION

The judgment entered below is affirmed in full.

Ramirez, P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 15, 1993.

---

[9]This emphasis on identifying "overt assistance" as the substance of the crime of being an accessory is not inconsistent with the discussion in *People* v. *Gunn* (1987) 197 Cal.App.3d 408, at pages 415-416 [242 Cal.Rptr. 834], to the effect that one can be liable as an accessory to a felony based on a continuous course of conduct as opposed to a single, identifiable and agreed-upon act. All we are saying is that the activities of the accused, whether a single act or an entire course of conduct, must amount to overt assistance as opposed to mere incitement or encouragement.