[No. H011099. Sixth Dist. May 27, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLO RENE CAMPBELL, Defendant and Appellant.

[No. H011244. Sixth Dist. May 27, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR TYRONE SMITH, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and IV.

COUNSEL

Steven Schorr and Paul Couenhoven, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen and Christina V. Kuo, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WUNDERLICH, J.—**

I

*Statement of the Case*

Defendant Carlo Rene Campbell appeals from a judgment entered after a jury convicted him of attempted robbery and attempted murder and also found that he personally used a firearm to commit these offenses. (Pen. Code, §§ 187, 211, 664, 12022.5, subd. (a).)[1]

Codefendant Victor Tyrone Smith appeals from a judgment entered after the same jury convicted him of attempted robbery and also found that he was armed at the time of the offense. (§§ 211, 664, 12022, subd. (a)(1).)

On appeal, Campbell contends he was denied effective assistance of counsel in that his attorney failed to raise a meritorious corpus delicti objection to the charge of attempted robbery. He also contends that the court

---

[1]Unless otherwise specified, all further statutory references are to the Penal Code.

erred in imposing sentences for both the attempted robbery and attempted murder and in ordering him to pay restitution without finding he had an ability to pay.

Smith contends the court erred in instructing the jury on aiding and abetting and claims his conviction for attempted robbery must be reversed because the jury probably relied on the erroneous instructions. He also contends that the court misinstructed the jury on the definition of aiding and abetting.

We strike the order directing Campbell to pay restitution and otherwise affirm the judgments as to both Campbell and Smith.

## II

### *Facts*

About 1 a.m., on September 26, 1991, Timothy Branch and his girlfriend Deborah Sester sat on a fence in front of an apartment complex on Cadillac Drive in San Jose arguing about whether to buy more crack cocaine.[2] While arguing, both noticed two men and a woman walk by. Several minutes later, Sester saw the two men, whom she later identified as Campbell and Smith, returning. As they approached, she grabbed Branch's leg.[3] When Campbell and Smith were in front of them, Branch heard Campbell say something like "this is a robbery, break yourself." Branch understood to mean empty your pockets. Sester heard Campbell say something but not what. She did hear Branch respond, " 'What do you mean? You don't know me and I don't know you and there ain't no future in this meeting.' "

Campbell responded by pointing a handgun an inch from Branch's head. Branch said it looked like a .38-caliber pistol. Acting instinctively, Branch swatted the gun away from his head, hoping to knock it loose. He then ran off, zigzagging down Cadillac Drive toward Winchester. Campbell held on to the gun, used a nearby mailbox to steady his arm, aimed at the fleeing Branch, and fired several times. The first shot shattered the rear window of a car. The second hit Branch, who grunted but continued running. A third shot went by his head. Thereafter, Campbell started chasing Branch, firing as he ran.

---

[2] Both had been smoking crack cocaine earlier in the evening.

[3] Branch identified both defendants at the preliminary hearing but recanted his identification at trial. However, Branch testified that later, while housed in the same jail during trial, Smith threatened to "stiff" him for identifying them. Branch admitted that he wrote to the district attorney twice expressing his concern about the threat. Branch testified that he thought Smith's threat was in retaliation for falsely identifying him at the preliminary hearing.

Branch was able to escape into a restaurant, whose owner called an ambulance. When the police arrived, Branch described his assailant. He also said he could identify him again. He then expressed concern for Sester, and the police went to look for her.

Meanwhile, in response to reports of gunshots in the area, some other police officers arrived and observed that Campbell was the only person around. When one officer honked at him, Campbell pulled up his shirt, reached into his waistband, and sprinted off. Police pursued and apprehended him. They found three spent .38-caliber cartridge shells in his pocket and a fully loaded .38-caliber revolver in bushes nearby. It was later determined that two of the cartridges had been fired by the gun. Markings on the third cartridge were not clear enough to permit identification.

After Campbell had left to chase Branch, Sester attempted to back away from Smith, but Smith grabbed her by the hair, saying, " 'Where the fuck are you going, bitch.' " He then asked what she had. She said she had only the gold earrings she was wearing and "that's all." Smith said she also had "pussy" and he wanted some. He walked her back toward a carport and told her to do what he said or he would "blow [her] fucking head off with his .25." Sester testified Smith raped her twice and forced her to orally copulate him twice.[4] Smith then forced Sester to go with him to a 7-Eleven store. The police officer who had gone to look for her saw the two of them and called out. He noticed Sester mouthing the words "I need help" and spoke to her alone. She said, "get [Smith] away from me, his friend shot my friend and he raped me." Police arrested Smith. Sester said she could identify the shooter, described him, and later identified Campbell. Campbell was also arrested.

### III, IV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### V

### *Smith's Appeal*

#### A. *The Conviction for Attempted Robbery*

Smith contends that his conviction for attempted robbery must be reversed due to a combination of insufficient evidence and instructional error. He

---

[4]Smith was charged with these sex offenses, but the jury was unable to reach a verdict on them.

*See footnote, *ante*, page 402.

notes that the prosecutor argued two different theories of liability: (1) Smith aided and abetted Campbell's attempt to rob Branch and/or (2) Smith personally attempted to rob Sester. Although Smith concedes there is sufficient evidence to support his conviction on the theory that he attempted to rob Sester, he claims there is insufficient evidence to support a conviction based on aiding and abetting Campbell and for this reason the court erred in giving aiding and abetting instructions.

■ Smith acknowledges that ordinarily, where there is sufficient evidence to support one of the factual theories of guilt asserted by the prosecution, appellate courts will presume the jury adopted that theory and affirm the judgment. (*People v. Guiton* (1993) 4 Cal.4th 1116, 1127 [17 Cal.Rptr.2d 365, 847 P.2d 45].) He points out, however, that where there is insufficient evidence to support one of the prosecution's theories, it is error for the trial court to instruct on it, and the error requires reversal if it is reasonably probable the jury relied solely on these factually unsupported instructions to convict the defendant. (*Id.* at p. 1130; see *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Here, Smith argues that because there was insufficient evidence that he aided and abetted Campbell, the court erred in instructing on aiding and abetting, and the error compels reversal because it is reasonably probable the jury relied on the aiding and abetting instructions to convict him of attempted robbery.

■ We disagree with Smith's initial claim that there is insufficient evidence to find that he aided and abetted Campbell's attempt to rob Branch.

■ "The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. [Citation.] To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction. We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented. [Citation.]" (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 528-529 [26 Cal.Rptr.2d 323]; see *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *Jackson v. Virginia* (1979) 443 U.S. 307, 318 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) Substantial evidence is evidence " 'of ponderable legal significance . . . reasonable in nature, credible, and of solid value.' [Citations.]" (*People v. Johnson, supra,* 26 Cal.3d at p. 576.)

■ "A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." (*People* v. *Cooper* (1991) 53 Cal.3d 1158, 1164 [282 Cal.Rptr. 450, 811 P.2d 742]; *People* v. *Beeman* (1984) 35 Cal.3d 547, 561 [199 Cal.Rptr. 60, 674 P.2d 1318].)

"Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment." (*People* v. *Mitchell* (1986) 183 Cal.App.3d 325, 329 [228 Cal.Rptr. 286].)

■ Here, Smith claims the evidence shows only that he was present when Campbell attempted to rob Branch. He argues that it is unreasonable to infer from his presence that he knew of and shared Campbell's criminal intent. We disagree with Smith's view of the evidence.

Smith correctly points out that in general neither presence at the scene of a crime nor knowledge of, but failure to prevent it, is sufficient to establish aiding and abetting its commission. (See *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *In re Jose T.* (1991) 230 Cal.App.3d 1455, 1460 [282 Cal.Rptr. 75].) However, "[a]mong the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094 [126 Cal.Rptr. 898].)

Here, virtually all of these factors are present. Smith did not independently happen by the scene of the crime. He had walked by Branch and Sester with Campbell and thus was aware of their isolation and vulnerability at that time and place. Smith then decided with Campbell to return to them. Together they approached Branch and Sester, stopping closely in front of them. Their concerted action reasonably implies a common purpose, which Campbell immediately revealed when he told Branch this was a robbery and then enforced this purpose with a firearm. During this time, Smith remained in position in front of Sester. Since there is no evidence he was surprised by Campbell's conduct or afraid to interfere with it, the jury could reasonably conclude that Smith assumed his position in front of Branch and Sester to intimidate and block them, divert suspicion, and watch out for others who might approach. Such conduct is a textbook example of aiding and abetting. (*People* v. *Ketchum* (1960) 185 Cal.App.2d 615, 619 [8 Cal.Rptr. 607]; *People* v. *Silva* (1956) 143 Cal.App.2d 162, 169 [300 P.2d 25].) Thus, the

evidence, in our view, reasonably indicates that Smith played an affirmative supportive role in the attempted robbery and was not simply an innocent, passive, and unwitting bystander.

Furthermore, after Campbell left to chase after Branch, Smith forcibly prevented Sester from leaving and asked what *she* had, that is, he attempted to rob her. This attempt further supports a finding that Smith and Campbell shared a common purpose when they returned to Branch and Sester and that Smith's conduct during the attempt to rob Branch was a knowing and intentional effort to assist Campbell. (See *People* v. *Griffin* (1967) 66 Cal.2d 459, 464-465 [58 Cal.Rptr. 107, 426 P.2d 507] [subsequent conduct may be relevant to prove motive and intent]; see, e.g., *In re Jose T.*, *supra*, 230 Cal.App.3d at pp. 1460-1461 [minor's later use of car evidence that his presence when it was stolen aided and abetted the person who stole it]; *People* v. *Luna* (1956) 140 Cal.App.2d 662, 665 [295 P.2d 457] [defendant's subsequent participation in fight with one person indicated he was not innocent bystander when codefendant started fight with another person].)

In sum, the evidence and the reasonable inferences therefrom taken together support a finding that Smith knew about and shared Campbell's intent to rob Branch and that in a supportive role, he affirmatively facilitated Campbell's attempt. In other words, there is substantial evidence that Smith aided and abetted Campbell. Therefore the trial court did not err in instructing the jury on this theory.

B. *The Instruction Defining Aiding and Abetting*

 Smith contends that the standard CALJIC instruction defining aiders and abettors (CALJIC No. 3.01) is an incorrect statement of the law. His claim may be summarized as follows.

Section 31 provides, in relevant part, that "[a]ll persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, . . . are principals in any crime so committed." (Italics added.)

Citing *People* v. *Elliott* (1993) 14 Cal.App.4th 1633 [18 Cal.Rptr.2d 426], Smith notes that the words "aid" and "abet" have different meanings: "[t]he word 'aids' means 'to *assist*; to *supplement* the efforts of another,' while the word 'abet' means merely to incite or encourage." (*Id.* at p. 1641, italics in original.) Thus, Smith argues that before it may convict one as an aider *and* abettor under section 31, the jury must find that he or she "both assisted *and* encouraged the actual perpetrator." (Italics added.)

Smith points out, however, that CALJIC No. 3.01, which was given in this case, provides, in relevant part, "A person aids and abets the commission or attempted commission of a crime when he or she, (1) with knowledge of the unlawful purpose of the perpetrator and (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages *or* instigates the commission of the crime." (CALJIC No. 3.01, italics added.) Noting use of the disjunctive "or," Smith argues that the instruction misapplies section 31 and erroneously permits the jury to convict on the basis of a finding that one aided *or* abetted (i.e., encouraged) the perpetrator. Thus, he claims use of the instruction violated his right to due process because it relieved the prosecutor of the burden of proving that he both aided *and* abetted Campbell's attempted robbery of Branch.

We conclude that the standard instruction properly defines the term "aid and abet."

We first note that section 31 was enacted in 1872. Yet, despite the simple logic of Smith's claim, he cites, and our research has revealed, no case holding, or even suggesting, that "aid and abet" requires separate findings concerning two distinct types of *acts* (assisting and encouraging) before a jury may properly convict a defendant as an aider and abettor. On the contrary, according to our Supreme Court, " '[t]o be an abettor the accused must have *instigated or advised* the commission of the crime *or been present for the purpose of assisting in its commission.*' " (*People* v. *Durham, supra,* 70 Cal.2d at p. 181, quoting *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133 [318 P.2d 828], italics in *Durham;* accord, *People* v. *Francis* (1969) 71 Cal.2d 66, 72 [75 Cal.Rptr. 199, 450 P.2d 591].) " '[T]he test is whether the accused in any way, directly or indirectly, aided the perpetrator by acts *or* encouraged him by words or gestures.' " (*People* v. *Francis, supra,* 71 Cal.2d at p. 72, quoting *People* v. *Villa, supra,* 156 Cal.App.2d at p. 134, italics added; *People* v. *Nguyen, supra,* 21 Cal.App.4th at p. 529; see *People* v. *Markus* (1978) 82 Cal.App.3d 477, 481 [147 Cal.Rptr. 151]; see also definition of "aid and abet" in Black's Law Dictionary (6th ed. 1990) p. 68.[7])

Defendant's reliance on *People* v. *Elliott, supra,* 14 Cal.App.4th 1633 is misplaced. The issue there was whether the court erred in refusing to give a defense "lesser related" instruction on accessory liability. (*Id* at p. 1639; see

---

[7]"Aid and abet. Help, assist, or facilitate the commission of a crime, promote the accomplishment thereof, help in advancing or bringing it about, or encourage, counsel, or incite as to its commission. [Citation.] It comprehends all assistance rendered by words, acts, encouragement, support, or presence, actual or constructive, to render assistance if necessary." (Black's Law Dict., *supra,* p. 68.)

*People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055].) Section 32 defines an accessory as one "who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof . . . ." On appeal, the court in *Elliott* found no error because there was no evidence that the defendant harbored, concealed, or aided the perpetrators. The court acknowledged evidence that the defendant had encouraged the perpetrators to run away and later hid with them. (14 Cal.App.4th at p. 1642.) Citing cases interpreting "aid" and "abet" in section 31, the court stated that to "aid" meant to actually assist or supplement another, whereas to "abet" meant only to encourage or incite him. (*Id.* at p. 1641, and fn. 8; but see *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 714 [124 Cal.Rptr. 418] [terms "promote" and "encourage" are synonyms of "aid" in the context of instructional definition of "aiding and abetting"].) The court reasoned that evidence of encouragement, standing alone, could not establish "aid" within the meaning of that term in section 32, and therefore such evidence did not support an accessory instruction.

The *Elliott* court did not purport to construe section 31 or the phrase "aid and abet." Moreover, although *Elliott* and the cases cited therein recognize a distinction between the terms "aid" and "abet," they do not suggest that the phrase "aid and abet" in section 32 requires separate findings that one assisted *and* encouraged the perpetrator of a crime.

We do not mean to suggest that there is *no* difference between the terms "aid" and "abet" or that the difference has no legal significance. As we shall explain, however, Smith misperceives the difference and misunderstands its significance.

■ The statutory phrase "aid and abet" is a term of art not commonly used or understood by laypersons and represents a legal theory under which one may be held vicariously liable as a principal for the criminal acts of another. (See *People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; *People* v. *Ponce* (1950) 96 Cal.App.2d 327, 331 [215 P.2d 75]; see also *People* v. *Beeman, supra,* 35 Cal.3d at p. 560 ["abet" is "arcane and its full import unlikely to be recognized by modern jurors"].) Indeed, failure to define "aid and abet" for the jury is error. (*People* v. *Patterson* (1989) 209 Cal.App.3d 610, 617 [257 Cal.Rptr. 407]; *People* v. *Ponce, supra,* 96 Cal.App.2d at p. 331.)

In explaining its meaning, courts have long noted a distinction between the terms "aid" and "abet." (See, e.g., *People* v. *Dole* (1898) 122 Cal. 486,

492-493 [55 P. 581].) What they considered to be legally significant, however, was not, as Smith claims, the difference in specific conduct signified by each term but rather the difference in *mental state* implied by each term. Thus in *People* v. *Dole, supra,* 122 Cal. 486, the court concluded that it was error to instruct the jury that one may be found guilty as a principal if one aided *or* abetted. (*Id.* at p. 492.) The reason, explained the court, was that one may "aid in the commission of an offense by doing innocently some act essential to its accomplishment . . . . The word 'aid' does not imply guilty knowledge or felonious intent, whereas the definition of the word 'abet' includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime." (*Id.* at p. 492; see *People* v. *Beeman, supra,* 35 Cal.3d at p. 556 [abetting implies a purpose or goal of furthering the encouraged result].)

This focus on mental state instead of conduct in explaining culpability under a theory of aiding and abetting reflects judicial awareness of the fundamental principle that criminal liability does not arise from conduct alone but rather from conduct accompanied by a guilty state of mind, that is, "a union, or joint operation of act *and* intent . . . ." (§ 20, italics added; see *People* v. *Hernandez* (1964) 61 Cal.2d 529, 532 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].) As a theory of liability, aiding and abetting must be consistent with this principle. (See *People* v. *Beeman, supra,* 35 Cal.3d at p. 556.) To this end, the term "abet" in the phrase "aid and abet" serves to supply the mental element necessary to justify the imposition of criminal liability. (See *People* v. *Beeman, supra,* 35 Cal.3d at p. 556 [an aider and abettor must have criminal intent in order to be convicted of a criminal offense].) In other words, the phrase "aid and abet" represents a legal theory. Each term therein performs a function necessary to justify the imposition of criminal liability. "Aid" requires some conduct by which one becomes "concerned in the commission of a crime" (§ 31), whether it be to aid (i.e., assist or supplement), promote, encourage, or instigate. (See *People* v. *Nguyen, supra,* 21 Cal.App.3d at p. 529.[8]) "Abet," on the other hand, requires that this conduct be accompanied by the requisite criminal state of mind, i.e., knowledge of the perpetrator's unlawful purpose and with the

---

[8]In *People* v. *Nguyen, supra,* 21 Cal.App.4th at page 529, the court explained, "[T]he law imposes criminal liability upon all persons 'concerned' in the commission of a crime. (§ 31.) As a legal standard this provision creates what may be considered a 'bright line' rule. If a person is 'concerned' in the commission of a crime then he is guilty of that crime without assessment of the degree of his involvement otherwise. 'Liability attaches to anyone "concerned," however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal.' [Citations.] A person is 'concerned' and hence guilty as an aider and abettor if, with the requisite state of mind, that person in any way, directly or indirectly, aided the actual perpetrator by acts or encouraged the perpetrator by words or gestures. [Citations.]"

intent that it be facilitated. (*People* v. *Beeman, supra,* 35 Cal.3d at pp. 560-561.)

■■■ Turning to the challenged instruction, we do not find that, as Smith claims, it permits the jury to convict one as a principal if it finds that he or she aided *or* abetted the commission of a crime. Rather we conclude that the instruction correctly explains the conduct and mental state necessary to convict one as a principal under the theory of aiding and abetting codified in section 31.

Our conclusion comes as no surprise, for the instruction repeats verbatim language that the Supreme Court itself proposed for an instruction in *People* v. *Beeman, supra,* 35 Cal.3d at page 561, and which the court reiterates when stating the basis for liability as an aider and abettor. (See, e.g., *People* v. *Cooper, supra,* 53 Cal.3d at p. 1164.)

### C. *CALJIC No. 2.90*

Appellant has filed a supplemental brief raising the constitutionality of CALJIC No. 2.90, based upon *Cage* v. *Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328] and *Sandoval* v. *California* (cert. granted Sept. 28, 1993, __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]). The Supreme Court has now upheld this instruction. (*Victor* v. *Nebraska* (1994) 511 U.S. __ [127 L.Ed.2d 583, 114 S.Ct. 1239].)

## VI

### *Disposition*

The superior court is directed to strike the order requiring Campbell to pay attorney fees. In all other respects the judgments against Campbell and Smith are affirmed.

Premo, Acting P. J., and Mihara, J., concurred.

The petition of appellant Carlo Rene Campbell for review by the Supreme Court was denied August 17, 1994.