Filed 5/26/23  P. v. Weems CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SHAWN DURELL WEEMS, JR., <br><br> Defendant and Appellant. | F084327 <br><br> (Kern Super. Ct. No. BF181090A) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Charles R. Brehmer, Judge.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Darren K. Indermill, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

On January 12, 2022, the Kern County District Attorney filed an amended information charging appellant and defendant Shawn Durell Weems, Jr. (defendant) with sexual intercourse or sodomy with a child 10 years old or younger (count 1; Pen. Code, § 288.7, subd. (a)),[1] lewd or lascivious act upon a child under the age of 14 years (count 3; § 288), two counts of oral copulation or sexual penetration of a child 10 years old or younger (counts 2 and 4; § 288.7, subd. (b)), and two counts of child molestation (counts 5 and 6, § 647.6, subd. (a)(1).) The information alleged that, as to count 3, the victim Jane Doe was "particularly vulnerable" under California Rules of Court, rule 4.421(a)(3).

A jury convicted defendant on all charges and found the "particularly vulnerable" allegation true. The court sentenced defendant to 25 years to life on count 1, concurrent terms of 15 years to life on counts 2 and 4, a stayed (§ 654) term of six years on count 3, a stayed (§ 654) term of one year in jail on count 5, and a concurrent term of one year in jail on count 6.[2] The court also imposed various fines and fees.

## FACTS

Jane Doe lived with her father, J.P., from January 2020 until around late May 2020. Jane Doe was born in the second week of May 2014, so she was five years old during most of this timeframe. J.P.'s girlfriend and her brother, defendant, also lived at the home. Defendant goes by the nickname Peanut.

Defendant showed Jane Doe a "bad" Little Mermaid movie on his phone. The mermaid "got on her dad," they did "the bend-down thing," and the dad put his private parts inside of Ariel.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The parties indicate that the term on count 6 was also stayed pursuant to section 654 but that was not reflected in the court's pronouncement of sentence nor the accompanying minute order.

To Jane Doe, "tutu" means penis. During a forensic interview, Jane Doe said defendant had also told her to lick his "tutu."[3] Jane Doe licked his "tutu" with her mouth. She eventually stopped licking his "tutu," because it was "nasty." However, when asked about this incident at trial, Jane Doe testified she did not know whether defendant had asked her to lick his "tutu."

On the night of May 14, 2020, another incident occurred involving defendant and Jane Doe. Jane Doe was watching TV when defendant entered the room and told her to roll over. Defendant stood behind Jane Doe. Defendant pulled down his pants and "started putting his private parts in mine," according to Jane Doe. Specifically, defendant put his boy part in her "butt," which felt bad.[4] Defendant said, "[D]oes it feel good?" Defendant also put his finger in her "butt."

During her forensic interview, Jane Doe said defendant asked if she wanted to see his "milk."[5] She responded, "[N]o." Defendant also put his "private part" in Jane Doe's mouth. Defendant told her she could not tell anyone.

The next day, on May 15, J.P.'s girlfriend told J.P. that Jane Doe had something to tell him. Jane Doe said that Peanut came into the room, asked if she wanted some milk, pulled his "thing" out, bent her over and she felt something wet on her back. She also said something about her pants being down. Jane Doe seemed uncomfortable and scared while recounting the incident. According to J.P., her description was "detailed and graphic enough to where a seven[-]year[-]old shouldn't know what that is."

A detective testified that the next day, on May 16, J.P. told him he had not asked Jane Doe if she had been penetrated "because there [were] some things he did not want to

---

[3] Both parties cite to the transcript of the interview in the clerk's transcript, and we will do the same.

[4] However, when later asked if he put his private part "inside of your butt," Jane Doe testified, "I don't know." Later still, Jane Doe testified that she did not know what it meant to be "inside" something.

[5] Jane Doe did not confirm this in her trial testimony.

3.

know."  However, at trial, J.P. testified that he did ask Jane Doe if she had been penetrated and she said no.

J.P. asked defendant if he had done anything with Jane Doe.  At one point, defendant said, "[I]f you ask me if I touched her, I didn't do anything."  J.P. said, "[I]t's funny how you mentioned touching her" because he had not yet mentioned anything to defendant about Jane Doe having been touched.  Later that day, defendant told J.P. "something about how he felt as though he had to do it because it would prove he was a man in some type of way…."

A detective interrogated defendant on May 16.**[6]**  Defendant said he told Jane Doe "to pull her pants down and then I – you know how you black out a little bit?"  "And – and then I was about to pull my pants but I was like, 'No.'  I had to – to stop myself 'cause I – I don't want that – didn't want to go to the situation, like, in a like, make a mistake that I don't want to do."

Later in the interrogation, defendant said he wanted to "start back over" his recounting of what happened.  He said, "I believe I got sexually frustrated" and "told her to put her pants down and then she looked away from me so she didn't see nothin'."  Jane Doe was bending over, and defendant's pants were down "a little bit."  Defendant told her to put her pants down, but she kept her underwear on.  Defendant asked if she wanted to see some milk come out of the "private."  However, defendant denied that any part of his body touched hers.  He also initially denied ejaculating but later admitted that he did, and that some ejaculate ended up on Jane Doe.

A nurse with the hospital's sexual assault response team examined Jane Doe on May 18.  She did not observe any external injuries to Jane Doe's vagina.  An inspection under an alternative light source did not reveal any ejaculate on Jane Doe.  However, the nurse was concerned that Jane Doe exhibited immediate anal dilation during the

---

**[6]** Both parties rely on the transcript of this interview in the clerk's transcript.  We will do the same.

4.

examination.  Immediate anal dilation is consistent with – though not conclusive in establishing – sexual assault.  However, the nurse would have expected to find more specific evidence if Jane Doe had been fully penetrated by a penis, though "it's hard to say."

### Incident Involving Second Victim

Defendant's niece, Jane Doe 2, was born in June of 2007.  One time, when she was around 12 years old, defendant showed her a pornographic version of the Little Mermaid during which the princess and her father had sex.  In total, defendant has showed Jane Doe 2 around 20 pornographic videos.  While showing her the videos, defendant would ask if she wanted to do the things depicted in the videos.  Sometimes defendant would beg, saying, "[P]lease, please, please," while asking for Jane Doe 2 to perform some of the acts depicted.  Defendant did not expose himself during these incidents.  Defendant admitted to detectives that he had shown a pornographic video to Jane Doe 2.

### Escape

Evidence was also presented regarding an attempt defendant had made to escape from custody.

## DISCUSSION

### I.     The Court Did Not Err in Instructing the Jury Regarding Unknown Objects

Defendant argues the court's "unknown objects" instruction was inapplicable to the evidence and erroneous.

### *Background*

In connection with count 2, the court instructed the jury it must find defendant engaged in an act of sexual penetration.  The court then instructed,

> "Sexual penetration means penetration however slight of the genital or anal opening of the other person by any foreign object, substance, instrument or device, or by any unknown object for the purpose of sexual abuse, arousal or gratification."

5.

Shortly thereafter, the court stated,

> "An unknown object includes any foreign object, substance, instrument or device, or any part of the body, including a penis. It is not known what object penetrated the opening. In regard to Count 2, sexual penetration, the People allege that the unknown object could be either or both a penis and a finger.
>
> "A foreign object, substance, instrument, or device includes any part of the body except a sexual organ."

***Law***

"It is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)

" 'The test for determining whether instructions on a particular theory of guilt are appropriate is whether there is substantial evidence which would support conviction on that theory. [Citation.] To determine whether there is substantial evidence to support a conviction we must view the record in a light most favorable to conviction, resolving all conflicts in the evidence and drawing all reasonable inferences in support of conviction. We may conclude that there is no substantial evidence in support of conviction only if it can be said that on the evidence presented no reasonable fact finder could find the defendant guilty on the theory presented.' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 408.)

***Analysis***

Defendant argues the court was wrong to instruct the jury on "unknown objects" because there was "no evidence in this record that [Jane Doe] was penetrated by an 'unknown object.' "[7]

---

[7] He also argues that because the object was known rather than unknown, a sexual organ such as a penis cannot suffice. (§ 289, subd. (k)(2).) As noted below, we reject the premise.

Defendant told detectives that he "told her to put her pants down and then she looked away from me so she didn't see nothin'." Jane Doe similarly testified that defendant was standing behind her. She told her father that she was bent down. Consequently, the jury could have reasonably concluded that Jane Doe felt the penetration but did not see it. In that circumstance, the jury could have credited Jane Doe's testimony that defendant penetrated her, while also being skeptical of her accuracy when she testified that he used both his finger and his penis.

While it is true that the only alleged objects of penetration were a penis *and/or* a finger, that still leaves open three possibilities – i.e., a penis, a finger, or both. Thus, it is "unknown" *which* specific object(s) was actually used for penetration. Knowing the universe of potential objects that could have been used is not equivalent to knowing which object was actually used to penetrate.

For these reasons, we conclude that, under at least one reasonable view of the evidence, the object of penetration was "unknown," such that an "unknown objects" instruction was proper. Consequently, we reject defendant's contentions that (1) the court mis-instructed the jury and (2) violated his constitutional rights.

## II.    No Unanimity Instruction was Required

"In a criminal case, 'the jury must agree unanimously the defendant is guilty of a *specific* crime.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 877.) " '[W]hen the evidence suggests more than one discrete crime, either the prosecution must elect among the crimes or the court must require the jury to agree on the same criminal act.' " (*Id*. at p. 878.)

Defendant observes that he was convicted of oral copulation of a minor under the age of 10 years in count 4. The evidence supported two instances of oral copulation: once when he showed Jane Doe the pornographic Little Mermaid video, and once during the incident on May 14. Consequently, either a prosecutorial election or unanimity instruction was required.

7.

Here, the prosecutor did make a clear election. Indeed, the prosecutor went through each count and identified the applicable criminal act during closing argument. Pertinent here, the prosecutor said, "Count 4, oral copulation of a minor ten and under, again with [Jane Doe], the licking of the tutu during the Little Mermaid between the time she moved into that house. She was clear that happened when she was five years old. It goes up to May 9, 2020, the date of her sixth birthday."

Because the prosecutor made a clear election, no unanimity instruction was required.

Defendant points to another portion of the prosecutor's argument, where he said, "Any contact between the mouth of one person and sexual organ of another, no matter how slight. Penetration is not required. So the sucking of the tutu, you're there. One lick. That's all it takes because we protect children."

Defendant apparently contends, without much elaboration, that this comment meant the prosecutor was *not* making an election regarding the act underlying count 4. We fail to see how. The prosecutor had previously clearly identified the act on which count 4 was based. In the comment cited by defendant, the prosecutor is merely emphasizing that the contact between Jane Doe's mouth and defendant's penis need only be slight and brief. It does not undermine the clarity of the prior election.

Because the prosecutor made a clear election, no unanimity instruction was needed.

### III. The Abstract of Judgment Should be Corrected

The parties agree there is an error in the abstract of judgment. We will direct the trial court to amend the abstract.

### DISPOSITION

The trial court is directed to prepare an amended abstract of judgment reflecting that defendant's conviction on count 3 was under section 288, subdivision (a) – not

section 288.7, subdivision (b), and to transmit the amended abstract to all appropriate parties and entities. In all other respects, the judgment is affirmed.


POOCHIGIAN, Acting P. J.

WE CONCUR:


FRANSON, J.


PEÑA, J.


9.