Filed 1/14/25  P. v. Yothers CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081934 |
| v. | (Super.Ct.No. FSB18004244) |
| SYLVIA DELACRUZ YOTHERS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Erin K. Alexander, Judge.  Affirmed.

Michael S. Evans for Plaintiff and Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Alan L. Amann and A. Natasha Cortilla, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Sylvia Delacruz Yothers of being an accessory after the fact. (Pen. Code, § 32.)[1] The trial court granted defendant formal probation for a period of one year. Defendant contends there is insufficient evidence that she aided the people involved in the underlying felony. We affirm.

## FACTS

On October 20, 2018, at approximately 10:20 p.m., David Arias (Arias) and Gabriel Sauceda (Sauceda) shot the victim multiple times in his leg. The shooting occurred in the street, on Straight Way, in the City of Crestline. Arias's house is located on Straight Way, approximately 100 yards from where the shooting occurred. Neighbors witnessed the shooting. Straight Way is in a neighborhood that has "a large forestry area, [with] a lot of debris, leaves, sticks, twigs, that kind of thing."

After the shooting, Arias telephoned defendant and told her "about him being accused" of shooting the victim. Defendant went to Arias's house, but he did not answer the door when she arrived. Defendant walked down Straight Way, toward the scene of the shooting. While walking, defendant found three live rounds of nine-millimeter Luger RP ammunition on the street. Defendant placed the live rounds in her pocket.

San Bernardino County Sheriff's deputies investigated the shooting the night it occurred. Deputies' patrol cars were parked near the scene of the shooting and crime scene tape was in the area where the victim was shot. Defendant saw the patrol car

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

lights and caution tape but kept the live rounds in her pocket rather than giving them to the deputies.

The type of spent bullet casings at the scene of the shooting was Luger 9mm RP. San Bernardino County Sheriff's Detective Stebbing used gloves to pick up the spent bullet casings to "make sure that . . . [he] did not contaminate the evidence with [his] own fingerprint[s and] DNA." If the evidence were contaminated then it would "no longer [be] useful for the case." The spent casings were then "separately packaged to make sure that [each] piece of evidence can be identified in that location where it was discovered at." The casings are also packaged separately "[s]o they don't touch each other. If there's separate DNA on separate pieces of evidence, they don't touch each other and have cross[-]contamination." The spent casings were sent to the crime lab to determine how many guns were involved in the shooting. The lab determined a single gun fired the spent casings.

Deputies later found the three live rounds in defendant's pocket when searching her. When a deputy asked defendant why she went to Arias's house after he told her he was accused of shooting someone, defendant explained that Arias was "freakin[g] out" and "[f]riends support other friends."

Deputies found Luger nine-millimeter ammunition when searching Arias's residence. Arias's and Sauceda's cases went to trial before defendant's case and the two were convicted; Arias was found to be the shooter. At defendant's trial, San Bernardino County Sheriff's Deputy Bush was asked if the three live rounds were critical to their investigation in the underlying case. The deputy responded, "20/20

3

hindsight now, no, [the live rounds] didn't have significance. At the time I thought [they] might." Also at defendant's trial, San Bernardino County Sheriff's Sergeant Trujillo was asked if the three live rounds taken by defendant were important in Arias's and Sauceda's cases. Sergeant Trujillo replied, "No."

## DISCUSSION

Defendant asserts there is insufficient evidence that taking the three live rounds of ammunition aided Arias and Sauceda in avoiding arrest, trial, conviction, or punishment.

" 'When a defendant challenges the sufficiency of the evidence for a jury finding, we review the entire record in the light most favorable to the judgment of the trial court. We evaluate whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' . . . Reversal is warranted only if there is no substantial evidence to support the verdict under any possible hypothesis." (*People v. Webb* (2023) 90 Cal.App.5th 660, 668.)

The crime of being an accessory after the fact requires the defendant "aids a principal . . . [after a] felony, with the intent that said principal may avoid . . . arrest, trial, conviction or punishment." (§ 32.) "The word 'aids' means 'to assist; to supplement the efforts of another.' " (*People v. Elliott* (1993) 14 Cal.App.4th 1633, 1641.) " 'The test of an accessory after the fact is that, [s]he renders [the] principal *some personal help* to elude punishment,—the kind of help being unimportant.' " (*Id.* at pp. 1641-1642.)

4

Defendant tampered with evidence by picking up and concealing the three live rounds. San Bernardino County Sheriff's Deputy Bush testified that the live rounds could have been useful evidence if "DNA or fingerprints [were] on them." In picking up the live rounds, defendant contaminated the rounds by placing her fingerprints and DNA on the rounds. Contaminating evidence can cause it to lose value as evidence.

Defendant's act of tampering with the live rounds foreclosed one avenue for the deputies to potentially discover if Arias, Sauceda, and/or a third party touched the ammunition. If defendant had left the ammunition alone, then deputies could have tested the ammunition for fingerprints or DNA to aid in the deputies' investigation of who was involved in the shooting. By contaminating the rounds with her own fingerprints and DNA and then concealing the rounds, defendant provided assistance to Arias and Sauceda. Thus, substantial evidence supports the finding that defendant aided those involved in the shooting.

Defendant asserts there is not substantial evidence of aiding because her help was ineffective, in that the live rounds were not useful evidence at Arias's and Sauceda's trial. Defendant tampered with the live rounds—she removed them from the area of the crime scene and contaminated them with her own fingerprints and DNA. Defendant's acts caused the live rounds to lose value as potential evidence, which is exactly how she aided Arias and Sauceda.

Nevertheless, if one were to view defendant's assistance as ineffectual, the conviction would stand. The aid provided to a principal does not need to "be effective or well thought out." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1205; see also *People v.*

5

*Cooper* (1991) 53 Cal.3d 1158, 1168 ["the effect of his or her actions is only to lessen the chance that the perpetrators will be captured and held accountable for their crimes"].) It is an act done with an intent to aid that is prohibited (§ 32; see also *People v. Partee* (2020) 8 Cal.5th 860, 869; *In re Malcolm M.* (2007) 147 Cal.App.4th 157, 168).

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

McKINSTER _____
Acting P. J.

FIELDS _____
J.