[No. B002402. Second Dist., Div. Seven. July 14, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE MITCHELL, JR., Defendant and Appellant.

## COUNSEL

Phillip I. Bronson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Slater Frederick and David S. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, P. J.**—Defendant Mitchell appeals from a judgment entered on a jury verdict finding him and codefendant Carolyn Anita Turner guilty of robbery.[1] Mitchell admitted to be true an allegation that he had been previously convicted of a felony (§ 11350, Health & Saf. Code) for which he served a term in state prison, and committed an offense resulting in a felony conviction during a period of five years subsequent to the conclusion of said term (§ 667.5, subd. (b), Pen. Code).

I

### FACTS

#### A. *Prosecution Evidence*

In the evening of January 31, Joseph Araman was at Hollywood Park seated on a stool near the cashier's window watching the races on a TV screen; he placed bets on 10 races and after each, went to the same window and cashed in his winning tickets. At the conclusion of the 10th race he was last in line and, after cashing in his tickets, counted his winnings which came to $3,000, put the money in the left pocket of his trousers and went to the down escalator, about 12 yards away; since he was one of the last to leave, there were not many people around.

---

[1]Codefendant Turner is not a party to this appeal. Also charged with Mitchell and Turner were three codefendants, Rickey Earl Hill, Robert Bailey and Terry Johnson, each of whom entered a plea of guilty and was sentenced by another judge prior to defendant's trial.

As he proceeded to the escalator, Araman observed five people—four males, one of whom was defendant, and a female, codefendant Turner—standing in a circle at the entrance to the escalator "talking between themselves." Just as Araman was about to enter, Turner "cut in front of [him] to get first on the escalator"; as he got on behind her, the four men followed him onto the escalator and stood behind him—two side by side on one step directly behind him, defendant and the fourth man standing abreast right behind them on the next step; near the base of the escalator Turner dropped her purse and as the contents fell out, she got down on the floor blocking the exit yelling and screaming as she picked up her belongings; Araman could not move at which time the two men directly behind him forcibly pulled Araman's arms behind his back while the man standing behind him on his left put his hand into his left trousers pocket and pulled out the money and, at the same time, a ring was pulled from his finger; then Turner moved to the right to permit defendant and the three men to exit; as they did so, Araman grabbed the man on his left and said, "You stole my money. I want my money, $3,000"; the man said he did not know what he was talking about and, as Araman wrestled him, defendant and the other two men fled; Araman lost control of the man, and he escaped joining the other three.

Araman then turned to Turner who was trying to leave, stopped her and accused her of being "the cause of that," doing it on purpose and being part of the group, and demanded his money; she started screaming that she did not know what he was talking about whereupon a security guard came over and took them both to the substation. Fifteen minutes later at defendant's car in the parking lot, Araman identified defendant as one of the four men who robbed him on the escalator. On the preliminary hearing he identified defendant as one of the robbers, and made positive in-court identification of defendant at trial.

Gilberto Gabb, an off-duty track employee, descended on the escalator directly behind and above Turner, Araman, defendant and the three other men, and observed the robbery. Turner shouted, "My purse, my purse," and one of the men pinned Araman's arms behind him; Araman turned and, as he grabbed one of the men behind him and said "You robbed me," "Call the police," the man handed an object to one of the other men who grabbed it and put it in the front pocket of his raincoat. Gabb ran after two of the men as they fled to the first floor and met defendant and the other man in front of the main gate; all four ran, removing articles of clothing, to a car one hundred yards away in the parking lot; they talked as they ran and all got into the car. Gabb alerted security, and Officers Morgan and Carson, motorcycle officers, approached the car.

All four men were in the vehicle, defendant in the driver's seat; he had started the engine, and the officers ordered him to turn off the ignition.

Officer Morgan observed the man seated directly behind defendant remove something from his waistband and place his hand behind his back. The four men were arrested. A search of the back seat revealed $3,000 jammed between the seat and the back. Fifteen minutes later Araman identified defendant and the three men as the robbers.

## B. Defense

Defendant did not take the stand; codefendant Rickey Earl Hill, who had entered a plea of guilty before another judge and been sentenced, was the sole defense witness. Hill testified that he and Robert Bailey went by cab to Hollywood Park on the evening of January 31 with the intent and for the purpose of robbing someone; there they met codefendant Terry Johnson who assisted them during the robbery; they talked to no female, no woman was involved and no particular woman was on the escalator; defendant was not with them and not on the escalator. They watched Araman and between 9 and 10 p.m. decided to rob him; he and Bailey got on the escalator behind him; at the bottom of the escalator Bailey reached into Araman's pocket and took out a large sum of money; he assisted Bailey by standing right behind Araman while Bailey went into his pocket; no one grabbed Araman's arms and held them in back of him while someone reached into his pocket, and no one blocked his exit; as Bailey took out his money, Araman turned around screaming accusing him (Hill) of taking his money and pulled him off the escalator; he got loose and ran to the left while Bailey and Johnson ran to the right; five or ten minutes later they saw defendant outside and asked him to give them a ride, offering him money to take them to town; the four of them walked to defendant's car and, removing his jacket, he got into the front seat; a security officer on a motorcycle came up and he was arrested.

## II

### SUFFICIENCY OF THE EVIDENCE

■ Appellant's contention that the evidence is not sufficient to support a finding that he aided and abetted the robbery is without merit. Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment. (*In re Jessie L.* (1982) 131 Cal.App.3d 202, 217 [182 Cal.Rptr. 396]; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094 [126 Cal.Rptr. 898].) Having viewed the entire record with the foregoing

in mind, we conclude that substantial evidence supports the judgment, that a reasonable trier of fact could find defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

█ The evidence readily establishes defendant as an aider and abettor in that he did "act with knowledge of the criminal purpose of the perpetrator[s] *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318]; original italics.) Virtually, all of the probative factors relative to aiding and abetting are present—presence at the scene of the crime, companionship and conduct before and after the offense, including flight. (*People* v. *Chagolla* (1983) 144 Cal.App.3d 422, 429 [193 Cal.Rptr. 711]; *In re Jessie L. supra*, 131 Cal.App.3d 202, 217; *People* v. *McDaniels* (1980) 107 Cal.App.3d 898, 904; *In re Lynette G., supra*, 54 Cal.App.3d 1087, 1094-1095 [166 Cal.Rptr. 12].) The evidence shows that defendant was present at the scene of the crime—in the terminal at the entrance to the down escalator, on the escalator, outside and in his car. He was in the company of the perpetrators of the crime engaged in conversation with them at the entrance to the escalator only seconds before the robbery plan was put in operation, and entered the escalator with them; he remained in their company during the robbery having positioned himself on the escalator in such a way as to protect them during the taking and facilitate their escape; and immediately after the taking, fled with them to his car in a nearby parking lot, entered the driver's side, started the engine and would have escaped had he not been detained by security.

Whether or not defendant knew of the plan to rob Araman before the taking occurred, it is reasonable to infer that in any case he had knowledge of the criminal purpose of the perpetrators from evidence of his position immediately behind them during the actual taking, especially in light of the victim's conduct in turning to one of them and loudly accusing him of stealing his money and wrestling him in an effort to hold him, and his flight with them. As to intent, proof of an aider and abettor's intent may be adduced "by way of an inference from [his] volitional acts with knowledge of their probable consequences." (*People* v. *Beeman, supra*, 35 Cal.3d 547, 560.) Such inference finds support in defendant's subsequent act of running to and starting his car in preparation to leave the scene of the crime with the perpetrators as his passengers and the loot in his car. Since a robbery is a continuing crime which is not completed until the robbers reach a place of temporary safety, evidence of defendant's assistance in the escape supports the conclusion that he was a participant in the robbery. (*People* v. *Jardine* (1981) 116 Cal.App.3d 907, 919 [172 Cal.Rptr. 408].)

## III

### AIDING AND ABETTING

At the request of the prosecution, the jury was instructed in the language of CALJIC Nos. 3.00 and 3.01 as they then read.[2] Subsequently our Supreme Court held those instructions to be erroneous because they fail to inform the jury that conviction as an aider and abettor requires not only that defendant act with knowledge of the criminal purpose of the perpetrator of the offense, but also with an intent or purpose either of committing, or of encouraging or facilitating commission of the crime. (*People v. Beeman, supra,* 35 Cal.3d 547, 560; *People v. Caldwell,* (1984) 36 Cal.3d 210, 223-224 [203 Cal.Rptr. 433, 681 P.2d 274].) Inasmuch as *Beeman* applies to cases not yet final at the time of that decision (*People v. Croy* (1985) 41 Cal.3d 1, 12 [221 Cal.Rptr. 592, 710 P.2d 392]), it was error to give former CALJIC 3.00 and 3.01. However, we do not find reversible error. (*People v. Leach* (1985) 41 Cal.3d 92, 106 [221 Cal.Rptr. 826, 710 P.2d 893].)

An illustrative analysis of the effect of *Beeman* error is made in *People v. Croy, supra,* 41 Cal.3d 1, 13-14 and *People v. Leach, supra,* 41 Cal.3d 92, 104-105. Apposite here is that portion of the discussion in *Leach,* quoting from *Croy,* "'. . . the instruction condemned in *Beeman,* unlike the pre-*Carlos* special circumstance instructions, did not entirely remove the question of the defendant's mental state from the jury's consideration. Former CALJIC No. 3.01, while containing the flaw discussed in *Beeman,* nonetheless informed the jury that the defendant's state of mind was relevant to the aiding and abetting question, explaining that the defendant must have aided the perpetrator *with knowledge of the perpetrator's unlawful purpose* in order to be found guilty as an aider and abettor.'" (Pp. 104-105, original italics.) Under these circumstances, said the court, "'the parties at least recognized that defendant's state of mind was at issue, so that a defendant who only accidentally or unintentionally aided the commission of a crime, or otherwise acted without the requisite intent, had a substantial incentive to place such evidence before the jury, frequently in conjunction with a

---

[2]"The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who, with knowledge of the unlawful purpose of the person who directly and actively commits the crime, aid and abet in its commission, or [¶] 3. Those who, whether present or not at the commission of the crime, advise and encourage its commission." (CALJIC No. 3.00.) "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime. [¶] Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting. [¶] Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting." (CALJIC No. 3.01.)

claim that he had no knowledge of the perpetrator's unlawful purpose. Thus, in many cases there may be no unfairness in assuming—for purposes of appeal and subject to the filing of a petition for writ of habeas corpus containing allegations to the contrary—that the record as made is no different from the record that would have been made had the defendant known that the more precise instruction required by *Beeman* should be given. Since, under former CALJIC No. 3.01, the jury could convict a defendant on an aiding and abetting theory only if it found that he acted with knowledge of the perpetrator's criminal intent, it may be possible in those cases for a court to determine that the *Beeman* error could not possibly have affected the verdict—i.e., that no reasonable trier of fact, having actually found the requisite knowledge, could at the same time have concluded that the defendant did not act for the purpose of facilitating or encouraging the crime. In those cases, the judgment could be affirmed.'" (P. 105.)

Given the People's evidence of defendant's participation in the taking, and the defense evidence that he was not with the perpetrators at all when the money was taken, the issue of defendant's knowledge of the perpetrators' unlawful purpose was squarely before the jury. The theory of the prosecution and the defense theory were straightforward and clear-cut. Defense counsel told the jury there was "abundant" evidence that a robbery had been committed and "clearly" more than one person committed the crime, but that defendant was not there. He argued that Araman was mistaken in his identification and had made an inconsistent statement; that Gabb's credibility, too, was affected by an inconsistent statement; that Officer Morgan was not armed, and had defendant been guilty he could have escaped, but he didn't; and that according to Hill, he simply was not there but was approached by the perpetrators 15 minutes later outside to take them to town for money. Had the jury accepted this evidence and the inference therefrom that he had no knowledge of a robbery when he used his car to drive them to town, defendant would have been acquitted; it rejected the defense. The prosecution argued that defendant was with the perpetrators, talked to them just before they put their robbery plan into operation, positioned himself on the escalator as to shield the taking from observation, give aid and assistance if necessary and block any interference, fled with them to his car parked 100 yards away, and would have completed the escape had he not been stopped. The jury having accepted this evidence, it found defendant guilty of robbery as a principal on an aiding and abetting theory.

In light of the foregoing, we can safely assume that the record as made is no different from the record that would have been made had defendant known that the more precise instruction required by *Beeman* should be given. We conclude that the *Beeman* error could not possibly have affected the verdict in that no reasonable trier of fact, having actually found the

requisite knowledge, could at the same time have concluded that defendant did not act for the purpose of facilitating or encouraging the crime. (*People v. Leach, supra,* 41 Cal.3d 92, 105; *People v. Croy, supra,* 41 Cal.3d 1, 14.) On this record, there is no possibility that the jury having found the requisite knowledge, could have found that defendant aided the commission of the robbery other than intentionally.

## IV

### ACCESSORY AFTER THE FACT

■ For the first time, appellant advances the position that if he was guilty at all it was not as an aider and abettor but as an accessory after the fact;[3] we reject the contention for the record fails to support such a finding. At the outset, it is clear that such a theory never entered the mind of anyone involved in the trial, and rightly so, for the evidence, no matter how viewed, does not establish defendant as an accessory after the fact as defined in section 32, Penal Code. Defendant was not charged in the information with being an accessory, no mention of such a theory was made in the trial court, no defense based on this theory was relied upon or even suggested, no one requested an instruction defining accessory after the fact, and the trial court had no duty sua sponte to give such an instruction because under no combination of facts on this record could a finding that defendant was an accessory be sustained. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715, 716 [112 Cal.Rptr. 1, 518 P.2d 913].)

The problem here, of course, lies in the fact that in a robbery, until the robbers reach a place of temporary safety the crime is not complete. (See *People v. Laursen* (1972) 8 Cal.3d 192, 200, fn. 6 [104 Cal.Rptr. 425, 501 P.2d 1145]; *People v. Jardine, supra,* 116 Cal.App.3d 907, 919.) Thus, if the participation of the defendant was only in facilitating their escape after the money was taken from Araman and he acted with the requisite knowledge and intent, he could not be an accessory after the fact because the crime of robbery had not yet been completed and a felony not committed; his assistance in the escape rendered him a principal not an accessory. (*People v. Jardine, supra,* 116 Cal.App.3d 907, 919.) In *Jardine,* Rucker, the driver of the getaway car requested but was refused an instruction defining accessory after the fact; the court held the defense evidence established that Rucker was an accomplice to the robbery in that he knowingly aided Pridgen and Jardine in carrying off the loot. "Assuming that Rucker had no knowl-

---

[3]Section 32, Penal Code, in pertinent part provides that "Every person who, after a felony has been committed . . . aids a principal in such felony, with the intent that said principal may avoid or escape from arrest . . . having knowledge that said principal has committed such felony . . . is an accessory to such felony."

edge that a robbery was to be committed before Pridgen emerged from the market, he was told of the robbery while his van was parked across the street. From that point on, if not before, he was engaged in assisting Pridgen and Jardine to escape to a place of safety. [¶] Since a robbery is a continuing crime which is not completed until the robbers reach a place of temporary safety, Rucker's assistance in the escape was necessarily a participation in the robbery." (P. 919.)

An analysis of the evidence before us demonstrates that under no combination of facts could defendant have been an accessory after the fact. Defendant was either guilty of robbery as a principal on an aiding and abetting theory, or not guilty. The jury believed the prosecution evidence and properly found defendant guilty; had it believed Hill, it would have had to find he committed no crime and acquit him. Had the jury believed defendant was with the perpetrators on the escalator but did, heard and saw nothing relating to the taking, thus had no knowledge a robbery was or was being committed, and believed Hill's testimony that when they got outside he agreed to drive them to town for money, it would have had to find him not guilty. Had the jury believed he was with the perpetrators on the escalator and did nothing to assist them but observed them take the money or was aware of the taking because of Araman's conduct and, knowing of the robbery, intentionally aided them for the purpose of making their escape by furnishing transportation to a place of temporary safety, it would have had to find him guilty as a principal on an aiding and abetting theory. In all of the foregoing examples, the bottom line is the same—the crime of robbery was still in progress, not having been completed because the perpetrators had not yet reached a place of temporary safety. (*People* v. *Jardine, supra,* 116 Cal.App.3d 907, 919.) Thus, defendant's assistance in the escape was necessarily a participation in the robbery.

DISPOSITION

The judgment is affirmed.

Thompson, J., and Johnson, J., concurred.