Filed 6/8/15  P. v. Hawkins CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CORDELL HAWKINS,<br><br>    Defendant and Appellant. | B254416<br><br>(Los Angeles County<br>Super. Ct. No. TA126746) |


APPEAL from a judgment of the Superior Court of Los Angeles County. Arthur M. Lew, Judge.  Affirmed as modified.


David L. Polsky, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael C. Keller and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.


_____

Defendant Cordell Hawkins appeals from a judgment following a jury trial in which he was convicted of first degree murder on an aiding and abetting theory. On appeal, he contends the evidence was insufficient to establish the intent element of aiding and abetting, in that he had not known his cohort would shoot the victim. We conclude the evidence is sufficient and affirm; we also modify the abstract of judgment to properly reflect the restitution fine imposed by the trial court.

## PROCEDURAL BACKGROUND

On May 23, 2013, defendant and his two comrades, Marlon Williams and Darnell Snell, were charged by information with the murder (Pen. Code, § 187, subd. (a)) of Ashton Croswell. It was alleged that the offense was committed for the benefit of a criminal street gang, within the meaning of Penal Code section 186.22, subdivision (b), and that a principal discharged a firearm causing great bodily injury or death, within the meaning of Penal Code section 12022.53, subdivisions (d) and (e)(1).

Williams was tried separately; defendant and Snell were tried together, but with separate juries. Defendant was convicted as charged. The murder was found to be in the first degree. Defendant was sentenced to a term of 25 years to life for the murder with a consecutive term of 25 years to life for the firearm enhancement. At sentencing, the court imposed both victim restitution and a restitution fine; however, the restitution fine was omitted from the abstract of judgment. Defendant filed a timely notice of appeal.

## FACTS

Defendant, Williams and Snell are all members of the Bounty Hunter Bloods gang. The main rival gang of the Bounty Hunter Bloods is the Grape Street Crips. According to the prosecution's gang expert, the rivalry between Bounty Hunter Bloods and Grape Street Crips is "the most violent and long lasting feud between two gangs that are in the Watts area."

On November 6, 2012, Snell was present at a fight between some Bounty Hunter Bloods and Grape Street Crips. The fight escalated into a shooting and one of Snell's

2

companions was shot in the leg. Snell told his companions that they were going to "get" the shooter, but not right then.

Later that night, defendant drove Snell and Williams into known Grape Street Crip territory. Defendant drove the wrong way down a one-way street, past where some 8 to 10 people had congregated, drinking and talking. Defendant parked the car on a nearby street. Snell and Williams got out of the car. They were wearing dark clothes, including black hoodie sweatshirts, with the hoods pulled up over their heads. Snell and Williams walked back toward the Grape Street Crips gang members they had seen earlier. It was 7:00 p.m., and dark. Williams and Snell approached the group. Williams said, "Where y'all from?" and immediately began shooting. Snell also had a gun, and tried to remove it from his waistband, but he never got off a shot. Once Williams had begun firing, the crowd scattered. When Williams stopped shooting, he and Snell ran back to the car. Defendant had the car already running, waiting for their return. After the trio had returned to safety, defendant got rid of the gun.

Ashton Croswell, a Grape Street Crips associate, had been shot in the buttocks. The bullet exited his torso and reentered his right arm. He was taken to the hospital, where he died eight days later from massive blood loss caused by the shooting.

No physical evidence or eyewitness testimony tied defendant, Williams, or Snell to the crime. However, when Williams and Snell were arrested, they were each placed in a jail cell with a former gang member who was working in an undercover capacity for the Los Angeles Police Department. The undercover informant recorded his conversations with Williams and Snell, in which Williams and Snell each admitted: (1) Williams was the shooter; (2) Snell accompanied him; and (3) defendant was the driver.

## DISCUSSION

1.      *Sufficient Evidence Supports the Jury's Verdict*

The jury was instructed that, to find defendant liable on an aider and abettor theory, it must find that: (1) the perpetrator committed the crime; (2) the defendant knew

that the perpetrator intended to commit the crime; (3) before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and (4) the defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. On appeal, defendant concedes the sufficiency of the evidence of the first and fourth elements – that is, that Williams murdered Croswell and that defendant, by driving the car, aided and abetted the murder. He further acknowledges that if there is sufficient evidence that he knew Williams intended to commit a shooting (element 2), the jury could rationally infer that defendant intended to facilitate it (element 3). Defendant's sole argument on appeal is that the evidence was insufficient to support the jury's implied finding that defendant knew Williams intended to commit a shooting.

" ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" [Citation.]' " (*People v. Virgo* (2013) 222 Cal.App.4th 788, 797.)

" 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " [Citations.]' [Citation.]" (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587.)

To be held liable as an aider and abettor, a defendant must have acted with knowledge of the criminal purpose of the perpetrators and with an intent or purpose of committing, encouraging or facilitating commission of the offense. (*People v. Mitchell* (1986) 183 Cal.App.3d 325, 330.) Factors probative on the issue of knowledge and intent

4

include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime. (*People v. Garcia* (2008) 168 Cal.App.4th 261, 273.)

There is sufficient evidence of these factors to enable a jury to conclude defendant knew Williams intended to commit a shooting. Earlier that day, a Grape Street Crip had shot a Bounty Hunter Blood, and Snell had vowed revenge. Under cover of darkness, defendant drove Snell and Williams, who were both armed, into known Grape Street Crip territory. He first drove them past an area where Grape Street Crip members were known to congregate, enabling them to scope out the area. He then parked nearby, where his fellow gang members left the car, armed with guns, with their hoodies pulled up over their heads, and walked back to their planned victims. Williams's gunshots could be heard where defendant was waiting. He made sure the car was running when the shooter and his companion returned to the car. He safely drove them out of the neighborhood, and helped to get rid of the evidence.

On appeal, defendant suggests that the evidence is equally amenable to the interpretation that he did not know Williams and Snell were planning on shooting the Grape Street Crip members, and he might have believed they were instead planning to spray paint their gang's name in the neighborhood or challenge the Grape Street Crips to a fistfight. But defendant had recently driven past the location of the shooting; he knew there were 8 to 10 Grape Street Crips (or their associates) in the area. It is extremely unlikely that two Bounty Hunter Bloods would intentionally walk into rival gang territory, knowing they were vastly outnumbered, simply to paint graffiti or offer a challenge. This is particular true in light of the fact that a Grape Street Crip had shot a Bounty Hunter Blood earlier in the day. Defendant suggests there is no evidence that he knew of the earlier altercation, and that he simply drove the car in response to orders of older gang members without knowing their intent. There was no evidence suggesting that gangs operate in this manner. On the contrary, the gang expert testified that it was important for young gang members to "put in [criminal] work" for the gang, which enhances the gang's reputation in the community and the individual's standing in the

gang. Moreover, gang members act in concert when committing violent crimes, because they have faith in each other, which increases their chances of getting away with their crimes. Under these circumstances, there is no rational basis to infer that two gang members intent on shooting a rival would recruit another gang member as their driver and *not* share their purpose with him.

2. *The Abstract of Judgment Must Be Modified*

When imposing sentence, the court is required to order both a restitution fine and direct victim restitution. (Pen. Code, § 1202.4, subd. (a)(3).) In this case, the reporter's transcript indicates the court properly ordered direct restitution (in a stipulated amount) and a restitution fine in the amount of $280. However, the restitution fine was omitted from the court's minute order and the abstract of judgment. We therefore modify the abstract of judgment to include the restitution fine imposed.

## DISPOSITION

The superior court is directed to modify the abstract of judgment to reflect the imposition of a restitution fine, under Penal Code section 1202.4, subdivision (b), in the amount of $280. As modified, the judgment is affirmed.


                                                    RUBIN, J.
WE CONCUR:


        BIGELOW, P. J.


        GRIMES, J.


6