Filed 12/9/20  P. v. Nix CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENNETH LAMAR NIX,<br><br>    Defendant and Appellant. | F078910<br><br>(Kern Super. Ct. No. BF173734B)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Dorothy A. Streutker, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

## **INTRODUCTION**

Appellant/defendant Kenneth Lamar Nix was convicted of second degree burglary and two misdemeanors. On appeal, he contends his burglary conviction must be reversed for insufficient evidence, and the court improperly ordered him to pay a restitution fine, fees, and other assessments without determining his ability to pay in violation of his constitutional right to due process under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). We order the prior prison term enhancements stricken and remand for resentencing, and otherwise affirm.

## **FACTS**

Julian Villalvazo lived in Bakersfield. On the night of September 10, 2018, he locked his garage and went to bed. There were usually homeless people in the area, but he had not seen anyone around that night.

Around 5:00 a.m. on September 11, 2018, Villalvazo woke up when he heard a "loud crash" in the alley adjacent to his garage. He quickly got out of bed and went outside within one to two minutes. The garage door was open, and the lights were on inside. Villalvazo later determined his garage door had been pried open.

Villalvazo realized several things had been taken from his garage, including two bicycles, a "stack" of skateboards, a sleeping bag, a tent, a propane camp stove, a backpack, and two bicycle pumps. He found other items on the ground outside the garage. His extension ladder had been removed from the garage and was propped against a power pole in the alley.

Villalvazo testified he "heard the sound of sprockets from a bicycle as bikes were taking off northbound in the alley right there," which would have been going away from his garage. He went into the alley and saw a man, later identified as defendant, riding a bicycle toward him. Villalvazo believed he saw defendant within two minutes of hearing the loud crash. There was no one else near his garage or in the alley.

Villalvazo testified they "crossed paths," and defendant said, "[O]h, man. You scared the shit out of me," as if defendant "wasn't expecting me to be there." Villalvazo told defendant it looked like some people had broken into his garage and taken some things.

Villalvazo went into his house and grabbed his truck keys. He got into his vehicle and drove northbound in the alley to see if he could find any of his property. After driving about 200 to 300 yards from his garage, he followed the alley as it curved and saw defendant with a man and a woman; no one else was present. Villalvazo's two stolen bicycles were leaning against the alley fence. Defendant was standing by a makeshift "caravan" that consisted of a wheelchair tied behind a grocery cart, and it was stacked with items, including some of his stolen property. Villalvazo saw a ladder and one of his skateboards on top of the cart.

Villalvazo turned on his truck's high beam lights and saw the second man trying to remove the tire from one of his stolen bicycles. When the man realized he was there, he jumped up, put a stolen backpack on his back, and took off down the alley on one of the stolen skateboards.

Villalvazo got out of his truck and yelled obscenities at the man who fled on the skateboard. Villalvazo confronted defendant and said his property was on his cart. Defendant agreed his property was there, but denied the skateboard belonged to him and refused to give it back. Defendant also refused to return the ladder until he realized how aggravated Villalvazo was, and then took it off the cart and placed it on the ground with some of his other stolen property.

Villalvazo stayed in the alley and called 911. As he talked to the dispatcher, defendant had a brief conversation with the woman and then jumped on his bicycle and rode away, pulling the cart behind him. The woman followed on foot.

3.

**The initial investigation**

At 5:15 a.m., Bakersfield Police Officer Nuno responded to the dispatch and met with Villalvazo. Villalvazo's description of the suspects was broadcast to other officers.

Officer Phillips drove around the area and turned into a parking lot in front of a Smart & Final store. She saw the woman standing near a building while defendant was behind some shrubs. The woman was standing by the overturned cart. Defendant walked toward her. Defendant's bicycle and a skateboard were by the shrubs. A spring loaded window punch tool was attached to defendant's bicycle. The two suspects were detained. The second male suspect was not apprehended.

Officer Nuno drove Villalvazo to the parking lot where the suspects were detained. Villalvazo identified defendant and the woman, codefendant Jennifer Lyn Cavish, as two of the people who were in the alley. He identified some of his stolen property that had been recovered: the camp stove, the tent, the two bicycle pumps, and the skateboard that defendant falsely claimed belonged to him. Villalvazo also recovered both of his stolen bicycles, which were worth $1,000 and $350, and a sleeping bag.

## PROCEDURAL HISTORY

Defendant and codefendant Cavish were jointly charged with count 1, second degree burglary (Pen. Code, § 460, subd. (b));[1] and count 3, misdemeanor receiving stolen property that belonged to Villalvazo (§ 496, subd. (a)).

Defendant was separately charged with count 2, misdemeanor possession of burglary tools (§ 466); and count 4, misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)). As to count 1, it was alleged he had seven prior prison term enhancements (§ 667.5, subd. (b)).

Prior to trial, defendant pleaded no contest to count 4, misdemeanor possession of methamphetamine. Thereafter, a joint jury trial was held for defendant and Cavish. On

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

4.

January 10, 2019, the jury found defendant guilty of count 1, second degree burglary, and count 3, misdemeanor receiving stolen property. He was found not guilty of count 2, possession of burglary tools.

Codefendant Cavish was found not guilty of both count 1, burglary, and count 3, misdemeanor receiving stolen property.

The court found all of defendant's prior prison term allegations true.

On February 28, 2019, the court sentenced defendant to an aggregate term of seven years, based on the upper term of three years for count 1, second degree burglary, plus four one-year terms for the prior prison term enhancements. The court imposed a split sentence with four years served in county jail, and three years on mandatory supervised release. The court stayed the remaining prior prison term enhancements and imposed concurrent jail terms for misdemeanor counts 3 and 4.

## DISCUSSION

### I. Defendant's Burglary Conviction is Supported by Substantial Evidence

The jury was instructed on defendant's culpability for second degree burglary as either the direct perpetrator or an aider and abettor. Defendant contends his conviction for second degree burglary of Villalvazo's garage is not supported by substantial evidence because he was never seen inside or taking the property, and the police never checked for fingerprints to place him there. Defendant asserts the circumstantial evidence was "slender," the burglary could have been committed by the unknown man who left with some of the stolen property, and the jury found codefendant Cavish not guilty of the same charge. Defendant argues there were "too many reasonable scenarios" that supported the inference someone else broke into the garage and stole the property, and the jury should have accepted the reasonable inferences in support of defendant's innocence.

5.

### A. Substantial evidence

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11, italics added.)

### B. Burglary

A second degree burglary is committed when a person enters a building that is not an inhabited dwelling house, with the intent to commit theft or any felony. (*People v. Tafoya* (2007) 42 Cal.4th 147, 170-171.)

"We have recognized that '[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to

6.

show his guilt.' [Citation.]" (*People v. Grimes* (2016) 1 Cal.5th 698, 731.) "As long as the corroborating evidence together with the conscious possession could naturally and reasonably support an inference of guilt, and that inference is sufficient to sustain a verdict beyond a reasonable doubt, we discern nothing that lessens the prosecution's burden of proof or implicates a defendant's right to due process...." (*People v. Williams* (2000) 79 Cal.App.4th 1157, 1173.)

" 'To establish liability under an aiding and abetting theory, the prosecution is required to prove the defendant knew of the perpetrator's unlawful purpose, and intended to and did aid, facilitate, promote, encourage, or instigate the commission of the crime. [Citation.] Presence at the scene of a crime, alone, is insufficient to establish aiding and abetting liability. [Citation.] However, the aider and abettor need not have advance knowledge of the crime or the perpetrator's intent. 'Aiding and abetting may be committed "on the spur of the moment," that is, as instantaneously as the criminal act itself. [Citation.]' [Citation.]" (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1148.)

"Whether defendant aided and abetted the crime is a question of fact, and on appeal all conflicts in the evidence and reasonable inferences must be resolved in favor of the judgment." (*People v. Mitchell* (1986) 183 Cal.App.3d 325, 329; *People v. Frandsen*, *supra*, 33 Cal.App.5th 1126, 1147-1148.) Relevant factors in determining whether a person aided and abetted a crime include presence at the crime scene, companionship, and conduct before and after the offense. (*People v. Battle* (2011) 198 Cal.App.4th 50, 84.)

### C.    *Analysis*

Defendant's burglary conviction is supported by substantial evidence either as the direct perpetrator or an aider and abettor. The evidence showed that someone pried open Villalvazo's garage door and took numerous items. Villalvazo heard the loud crashing noise, quickly went outside, and thought he heard the sounds of bicycles traveling away from his garage. Within two minutes of hearing the crashing sounds, he went into the

alley and saw defendant riding his bicycle toward his garage. No one else was in the alley or near the garage. Villalvazo's stolen ladder was leaning against a power pole in the alley, and other property was on the ground near the garage. As Villalvazo later found out, the rest of his stolen property was further down the alley, about 200 to 300 yards away. Some items had already placed in the makeshift cart that defendant appeared to control. The unknown male accomplice was next to the two stolen bicycles, and he was trying to remove the tire from one of them.

Based on these facts, the jury could have reasonably found that defendant and his male accomplice broke into the garage and ferried the stolen property away to their cart around the curve of the alley. Villalvazo thought he initially heard the sound of bicycles moving away from the garage, which would have been consistent with the accomplice moving the two stolen bicycles away from the area, while defendant drove his own bicycle and carried other stolen property. When Villalvazo startled defendant in the alley, it is reasonable to infer that defendant was riding his own bicycle back to the garage to pick up the rest of the stolen property, such as the ladder that was leaning against the power pole. Villalvazo drove down the alley, found defendant and the accomplice, confronted them, and the accomplice immediate fled on one of the stolen skateboards while taking a stolen backpack. Defendant disputed Villalvazo's insistence that the property in the cart belonged to him. When the police later found defendant in the parking lot, they also found the rest of Villalvazo's stolen property in the cart.

Defendant asserts his burglary conviction is not supported by substantial evidence because his codefendant was found not guilty, no one saw him entering or inside the garage, and the jury should have accepted the reasonable inferences in support of his innocence. In contrast to defendant and the male accomplice, codefendant Cavish was never seen near the garage, or in possession of or ferrying the recently stolen property away from the garage, which would have supported a reasonable inference that she was also aiding and abetting the burglary. While the evidence as to defendant may have been

8.

subject to multiple inferences, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez, supra*, 20 Cal.4th at p. 11.)  Defendant's burglary conviction is supported by substantial evidence.

## II.     The Restitution Fines, Fees, and Assessments

The court ordered defendant to pay a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $300 (§ 1202.45).  The court also imposed a crime prevention fee of $10 as to count 1, second degree burglary (§ 1202.5).  As to each conviction, the court imposed a court operations assessment of $40 for a total of $120 (§ 1465.8), and a court facilities assessment of $30 for a total of $90 (Gov. Code, § 70373).  As to count 4, the court imposed a laboratory analysis fee of $50 under Health and Safety Code section 11372.5 plus a penalty assessment of $155; and a drug program fee of $100 under Health and Safety Code section 11372.7 plus a penalty assessment of $310.

Defendant argues the court improperly imposed the restitution fine, fees, and assessments without determining his ability to pay in violation of his due process rights as stated in *Dueñas,* and this court must strike the amounts imposed.  *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[2]

We disagree with the holding in *Dueñas* and find the matter need not be remanded on this issue.  As we recently explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055

---

[2] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof.  (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

(*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, at pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

Next, to the extent *Dueñas* applies to this case, the court imposed the minimum restitution fine of $300, and defendant lacked the statutory authority to object under the governing law at the time of his sentencing hearing. (Cf. *People v. Frandsen, supra,* 33 Cal.App.5th 1126, 1153–1154.) However, defendant had the statutory authority to raise ability to pay objections to the court's imposition of the crime prevention fine pursuant to section 1202.5, subdivision (a), and the drug program fee pursuant to Health and Safety Code section 11372.7, subdivision (b). (*People v. McCullough* (2013) 56 Cal.4th 589, 598-599.) Defendant could have relied on these statutes to similarly argue that he lacked the ability to pay the other fines and assessments. (See, e.g., *People v. Frandsen, supra*, 33 Cal.App.5th at pp. 1153-1154.)

In any event, even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt since defendant has the ability to pay the fines and fees imposed in this case. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031; *Aviles, supra*, 39 Cal.App.5th at pp. 1075-1077.)

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the

defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]'" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the aggregate amount of fines and fees from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fine and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job. While it may take defendant some time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1055–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

Finally, defendant argues the court did not properly impose the $30 assessments under Government Code section 70373. The minute order correctly states that as to counts 1, 3, and 4, the court imposed the $30 fees pursuant to Government Code section 70373. According to the reporter's transcript, however, the court stated it was imposing the $30 fees under Government Code section "7373." Defense counsel did not object and the court obviously misstated the code section. The abstract of judgment is not contained in the appellate record. If the abstract contains a similar error, the court may correct it on remand.

## III.   The Prior Prison Term Enhancements

The court found true the seven alleged prior prison term enhancements (§ 667.5, subd. (b)). It imposed four consecutive one-year terms and ordered the remaining three enhancements stayed.

Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136) amended section 667.5, subdivision (b), to limit the imposition of prior prison

11.

term enhancements to only prior terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)

Defendant contends, and the People concede, that none of defendant's prior prison terms were served for a sexually violent offense, and the court's true findings and the terms imposed must be stricken.

Both parties also agree the matter must be remanded for resentencing. As noted by the People, the reduction of defendant's aggregate term by four years might affect the split sentence imposed by the court, and the matter must be remanded for resentencing.

## DISPOSITION

The court's true findings on the prior prison term enhancements and the four one-year terms imposed therein are stricken, and the matter remanded for resentencing. On remand, the court shall determine whether it must correct the abstract of judgment as to the fees imposed pursuant to Government Code section 70373. In all other respects, the judgment is affirmed.